UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

RONALD A. KOVACS,

    Plaintiff,

v.

Case No. 15-11581
Hon. Gerald E. Rosen

AMERICAN GENERAL LIFE
INSURANCE COMPANY,

    Defendant.
_____/

**OPINION AND ORDER
REGARDING CROSS-MOTIONS TO AFFIRM
OR REVERSE ERISA BENEFITS DETERMINATION**

At a session of said Court, held in
the U.S. Courthouse, Detroit, Michigan
on     January 9, 2017    

PRESENT:    Honorable Gerald E. Rosen
                   United States District Judge

**I. INTRODUCTION**

Plaintiff Ronald A. Kovacs commenced this action in state court on or around March 18, 2015, asserting a breach of contract claim and other state-law theories of recovery against Defendant American General Life Insurance Company arising from Defendant's denial of Plaintiff's claim for benefits under a group life insurance policy issued by Defendant to Property Loss Consultants, Inc., the

employer of Plaintiff's deceased wife. Defendant removed the case to this Court on May 1, 2015, on the ground that Plaintiff's state-law claims challenging the denial of benefits under a group life insurance policy issued to an employer are completely preempted by the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 *et seq. See Metropolitan Life Insurance Co. v. Taylor,* 481 U.S. 58, 66-67, 107 S. Ct. 1542, 1548 (1987).

Presently before the Court are Plaintiff's and Defendant's cross-motions to reverse or affirm, respectively, the Defendant insurer's denial of Plaintiff's claim for life insurance benefits. As the basis for this denial, Defendant asserts that Plaintiff's wife, Terry Kovacs, no longer had life insurance coverage at the time of her death because she had ceased her active employment several months earlier and had not converted her group coverage to an individual policy. Plaintiff, in contrast, contends that his wife continued her full-time employment up until her death, and he argues that the Defendant concluded otherwise only through an arbitrary reading of the record and a failure to conduct a proper investigation.

The parties' cross-motions have been fully briefed and are ready for decision. Upon reviewing the parties' submissions, the pleadings, and the administrative record, the Court finds that the relevant allegations, facts, and legal arguments are adequately presented in these materials, and that oral argument

would not significantly aid the decisional process. Accordingly, the Court will decide the parties' motions "on the briefs," *see* Local Rule 7.1(f)(2), U.S. District Court, Eastern District of Michigan, in accordance with the guidelines articulated by the Sixth Circuit in *Wilkins v. Baptist Healthcare System, Inc.,* 150 F.3d 609, 619 (6th Cir. 1998).[1] This opinion and order sets forth the Court's findings of fact and conclusions of law. To the extent that any findings of fact constitute conclusions of law, they are adopted as such. To the extent that any conclusions of law constitute findings of fact, they are so adopted.

## II.  FINDINGS OF FACT

**A.    The Parties**

Defendant American General Life Insurance Company provides life insurance coverage to employees of Property Loss Consultants, Inc. ("PLC") through a group life insurance policy (the "Policy") issued to the company. Plaintiff Ronald A. Kovacs is the sole shareholder, officer, and director of PLC, and his wife, Terry A. Kovacs, was covered by the Policy as an employee of the

---

[1] Specifically, *Wilkins* holds that neither an award of summary judgment nor a bench trial is an appropriate procedural mechanism for resolving a claim to recover benefits under an ERISA plan. Rather, the Sixth Circuit stated that district courts generally should review challenged benefit denials "based solely upon the administrative record, and [should] render findings of fact and conclusions of law accordingly." *Wilkins,* 150 F.3d at 619.

firm owned by her husband.

**B.     The Relevant Terms of the Policy**

This case arises from Plaintiff's request for life insurance benefits under the Policy following his wife's death on December 7, 2014.  In order to be eligible for benefits under the Policy, an individual must be a member of the "Eligible Class[]" of "full-time employees" of PLC, and not a "temporary, part-time or seasonal" employee.  (Administrative Record ("AR") at 9.)  The Policy defines "full-time" employment as "active work on [PLC's] regular work schedule for the class of employees to which you belong," and further mandates that this "work schedule must be at least 30 hours a week."  (*Id.* at 5.)  "Active work," in turn, is defined as "performing normal duties for [PLC] at the usual place of employment, an alternative work site at the direction of [PLC], or at a location to which [PLC] requires the insured to travel."  (*Id.* at 6.)

Under the Policy, an employee's life insurance coverage terminates "on the earliest of" a number of dates, including (as relevant here) "at the end of the month following the date the insured ceases to be a member of an Eligible Class," (*id.* at 11) — *i.e.,* the date that an individual is no longer a full-time employee of PLC.  A separate provision, however, establishes various "exceptions" to the termination of coverage upon cessation of full-time employment; as pertinent here, if an

employee "terminates Active Work due to Injury or Sickness, coverage under the Policy may be continued in accordance with the Extension of Life Insurance provision" set forth elsewhere in the Policy.  (*Id.*)  This "Extension of Life Insurance" provision, in turn, states that "[i]f the insured becomes Totally Disabled before reaching age 60, his or her Basic and Supplemental Life Insurance under this Policy will continue for one year from the date the Insured becomes Totally Disabled, provided that the Insured remains Totally Disabled, and premiums are paid when due."  (*Id.* at 13.)

As another means of extending coverage, the Policy recognizes a "Conversion Privilege" that allows an insured to "convert his or her Life Insurance under the Policy to an individual policy" upon the termination of coverage under the Policy.  (*Id.* at 14.)  As pertinent here, in order to be eligible for conversion to an individual policy, an insured must have "cease[d] to be a member of an Eligible Class," and he or she must apply in writing to the Defendant insurer and pay the first premium within 31 days after termination of coverage under the Policy.  (*Id.*)

Finally, the Policy confers upon the Defendant insurer the "sole discretionary authority to determine eligibility, make all factual determinations and to construe all terms of this [P]olicy."  (*Id.* at 20.)  If an insured's claim for benefits is "wholly or partially denied," the insured "may appeal to [the Defendant

insurer] for a full and fair review," and the Policy further provides that an insured may "file suit in a state or federal court" if his or her claim for benefits is "denied or ignored." (*Id.* at 25.)

### C.     Plaintiff's Claim for Life Insurance Benefits Under the Policy

Plaintiff's wife, Terry A. Kovacs, passed away on December 7, 2014. On December 22, 2014, Plaintiff contacted Defendant to provide notice of his claim for life insurance benefits, and Defendant advised him of the process for filing a claim and sent him the applicable forms. (*See id.* at 71.)

On January 1, 2015, Plaintiff executed a "Proof of Group Death Claim" form, stating that his wife had died of cancer on December 7, 2014. (*See id.* at 31.) On the first page of this form, Plaintiff stated that his wife's last full day of active work was August 31, 2014, and that she stopped working due to illness. (*See id.* at 30.) Plaintiff further indicated that his wife was a full-time employee who averaged "35+" hours of work per week. (*Id.*) Finally, Plaintiff provided a statement from his wife's physician, Dr. Shalini Gupta, indicating that Mrs. Kovacs had been treated for cancer in office visits spanning from June 21, 2013 to October 8, 2014, and that she had died in the hospital from respiratory failure brought about by cancer. (*See id.*)

By correspondence dated February 9, 2015, Defendant notified Plaintiff that

his claim for life insurance benefits had been denied. (*See id.* at 26-29.) In support of this decision, Defendant explained that Mrs. Kovacs "was not eligible for insurance coverage on the date of her death," since (i) the Policy provides that this coverage terminates at the end of the month in which an employee ceases to work, and (ii) the information submitted to Defendant disclosed that Mrs. Kovacs' "last full day of active work was August 31, 2014." (*Id.* at 26.) Defendant advised Plaintiff that he could "elect to appeal [the insurer's] decision . . . in writing within 180 days," and that "[f]ollowing any appeal with an adverse decision," he had "the right to bring [a] civil action under Section 502(a) of ERISA." (*Id.* at 29.)

Plaintiff did not pursue an administrative appeal of Defendant's decision. Instead, he commenced this suit in state court on or around March 18, 2015, seeking to overturn Defendant's denial of his claim for life insurance benefits through a variety of state-law theories of recovery. Defendant removed the case to this Court on May 1, 2015, contending that the various state-law claims asserted by Plaintiff are completely preempted by ERISA.

### III.  CONCLUSIONS OF LAW

**A.     The Standards Governing the Parties' Cross-Motions**

Defendant's removal of this action to this Court rests upon the undisputed

premise that Plaintiff seeks to recover benefits under a group life insurance policy governed by ERISA, so that his state-law claims for policy benefits are completely preempted by this federal statute and hence removable to federal court. *See Metropolitan Life Insurance Co. v. Taylor,* 481 U.S. 58, 66-67, 107 S. Ct. 1542, 1548 (1987). More specifically, ERISA confers a right upon Plaintiff, as the beneficiary of a employee benefit plan governed by ERISA, to bring suit in federal district court to recover benefits allegedly due under the terms of the plan. 29 U.S.C. § 1132(a)(1)(B). Courts review *de novo* a denial of benefits challenged under this provision, unless the benefit plan grants the Defendant plan or claims administrator the discretionary authority to determine eligibility for benefits or to construe the terms of the plan, in which case a more deferential "arbitrary and capricious" standard applies. *See Firestone Tire & Rubber Co. v. Bruch,* 489 U.S. 101, 115, 109 S. Ct. 948, 956-57 (1989); *Yeager v. Reliance Standard Life Ins. Co.,* 88 F.3d 376, 380 (6th Cir. 1996).

In this case, Defendant states without contradiction that the language of the Policy triggers the more deferential "arbitrary and capricious" standard of review. In particular, the Policy grants to Defendant the "sole discretionary authority to determine eligibility, make all factual determinations and to construe all terms of this [P]olicy." (Admin. Record at 20.) The Sixth Circuit has recognized that plan

language of this sort confers sufficient discretionary authority to warrant judicial review under the "arbitrary and capricious" standard. *See, e.g., Calvert v. Firstar Finance, Inc.,* 409 F.3d 286, 292 (6th Cir. 2005) (holding that plan language granting the plan administrator the "sole discretion" to "construe the terms of" a policy governed by ERISA and "to determine eligibility" under the policy triggered arbitrary and capricious review).

Accordingly, the Court will apply the "arbitrary and capricious" standard in reviewing Defendant's denial of Plaintiff's claim for life insurance benefits. This is the "least demanding form of judicial review," under which the Court must uphold a denial of benefits if it is "rational in light of the plan's provisions." *Monks v. Keystone Powdered Metal Co.,* 78 F. Supp.2d 647, 657 (E.D. Mich. 2000) (internal quotation marks and citations omitted), *aff'd,* 2001 WL 493367 (6th Cir. May 3, 2001). "When it is possible to offer a reasoned explanation, based on the evidence, for a particular outcome, that outcome is not arbitrary or capricious." *Davis v. Kentucky Finance Cos. Retirement Plan*, 887 F.2d 689, 693 (6th Cir. 1989) (internal quotation marks and citations omitted). Rather, in order to "conclud[e] that a decision was arbitrary and capricious, a court must be confident that the decisionmaker overlooked something important or seriously erred in appreciating the significance of evidence." *Marchetti v. Sun Life*

*Assurance Co.,* 30 F. Supp.2d 1001, 1008 (M.D. Tenn. 1998). Even where "the evidence may be sufficient to support [an award of benefits], if there is a reasonable explanation for the administrator's decision denying benefits in light of the plan's provisions, then the decision is neither arbitrary nor capricious." *Schwalm v. Guardian Life Insurance Co.,* 626 F.3d 299, 308 (6th Cir. 2010).

**B.    Defendant's Denial of Plaintiff's Claim for Life Insurance Benefits Was Not Arbitrary or Capricious, But Instead Rested upon a Reasoned Application of the Policy Language to the Facts in the Administrative Record.**

With these standards in mind, the Court turns to a review of Defendant's decision that Plaintiff's wife, Terry Kovacs, was no longer eligible for life insurance benefits at the time of her death on December 7, 2014. This decision, as discussed above, was based on Defendant's understanding that Mrs. Kovacs' last day of full-time employment was August 31, 2014. Under the plain language of the Policy, Mrs. Kovacs' life insurance coverage terminated "at the end of the month following the date [she] cease[d] to be a member of [the] Eligible Class" of full-time employees of PLC. (Admin. Record at 11; *see also id.* at 5 (defining the "Eligible Class[]" as "[a]ll full-time employees").) It follows, in Defendant's view, that Mrs. Kovacs' coverage under the Policy "ended on September 30, 2014, approximately ten weeks before her death on December 7, 2014." (Defendant's

Motion, Br. in Support at 10.)

The Court cannot see how this decision could be deemed suspect in any way, let alone arbitrary or capricious. In his application for life insurance benefits, Plaintiff expressly identified his wife's "Last Full Day of Active Work" as August 31, 2014. (Admin. Record at 30.) Although, as noted above, the Policy provides mechanisms through which coverage may be extended beyond an employee's last day of full-time work or group life insurance may be converted to an individual policy, (*see id.* at 11, 13, 14), Plaintiff does not contend that he or his wife invoked any such mechanism to extend or convert the coverage granted to Mrs. Kovacs under the Policy. Because Plaintiff himself stated that his wife's last full day of active work was August 31, 2014, and because the Policy provides that coverage terminates "at the end of the month following the date the insured ceases to be a member of an 'Eligible Class,'" (*id.* at 11) — a class consisting of "[a]ll full-time employees," with "full-time" employment in turn defined as "active work on [PLC's] regular work schedule" of "at least 30 hours a week," (*id.* at 5) — the conclusion is inescapable that Mrs. Kovacs' coverage under the Policy terminated several weeks before her death.

Plaintiff suggests two means for avoiding this result, but neither withstands even cursory scrutiny. First, while he concedes that his wife ceased working in

11

PLC's "formal" office as of August 31, 2014, he maintains that she continued to work from an office at the Kovacs' home up until her death on December 7, 2014. (*See* Plaintiff's Motion, Br. in Support at 2.)[2] As his sole support for this contention, Plaintiff points to an affidavit he has submitted in support of his motion to reverse Defendant's denial of his claim for benefits. (*See* Plaintiff's Motion, R. Kovacs 11/16/2015 Aff. at ¶¶ 6-9.) This affidavit, however, is not a part of the administrative record, and it is well settled that in reviewing Defendant's challenged decision, the Court is "confined to the record that was before the Plan Administrator" and "may not admit or consider any evidence not presented to the administrator." *Wilkins,* 150 F.3d at 615, 619.[3] When Defendant's decision is reviewed in light of the facts and evidence in the

---

[2]The Court notes that Plaintiff's motion and brief lack page numbers, and also fail in a variety of other respects to comply with the Local Rules of this District governing the format of papers filed with the Court. *See* Local Rule 5.1(a), Local Rule 7.1(b)(1), Local Rule 7.1(d)(1)-(2). Plaintiff's counsel is cautioned to familiarize himself with these rules before filing any further papers with the Court.

[3]*Wilkins* itself recognizes an exception to this rule where evidence outside of the administrative record "is offered in support of a procedural challenge to the administrator's decision, such as an alleged lack of due process afforded by the administrator or alleged bias on its part." *Wilkins,* 150 F.3d at 619. Plaintiff, however, has advanced no such procedural challenge here, nor did he request an opportunity to conduct discovery in support of any such challenge. In addition, while the pertinent record that the Court may consider encompasses all materials considered during any phase of the administrative review process, including administrative appeals, *see Miller v. Metropolitan Life Insurance Co.,* 925 F.2d 979, 986 (6th Cir. 1991), Plaintiff did not pursue the administrative appeal that was available to him under the terms of the Policy.

administrative record, there simply is no basis upon which Defendant could have determined that Mrs. Kovacs continued her full-time employment with PLC after August 31, 2014.

Plaintiff next suggests that the information he supplied to Defendant in his application for life insurance benefits was either ambiguous or internally inconsistent, thereby triggering Defendant's obligation to further investigate Mrs. Kovacs' eligibility for life insurance benefits at the time of her death. Plaintiff points, in particular, to a purported "discrepancy" in his statements (i) that his wife's last full day of active work was August 31, 2014, and (ii) that she was a full-time employee who worked "35+" hours per week. (*See* Plaintiff's Motion, Br. in Support at 5 (citing Admin. Record at 30).)[4] Plaintiff argues that if Defendant had asked for more information in order to resolve this alleged uncertainty, it would have learned that Mrs. Kovacs continued to work from home until the date of her death.

The Court perceives no such inconsistency in the information Plaintiff

---

[4]Plaintiff further suggests that the potential for ambiguity or inconsistency in these two responses is increased by virtue of the Policy's purported failure to define "active work." (*See* Plaintiff's Motion, Br. in Support at 4.) As Defendant points out, however, the Policy does in fact explicitly define "ACTIVE WORK/ACTIVELY AT WORK" as "performing normal duties for [PLC] at the usual place of employment, an alternative work site at the direction of [PLC], or at a location to which [PLC] requires the Insured to travel." (Admin. Record at 6.)

provided to Defendant in support of his claim for life insurance benefits. The two types of information requested in Defendant's claim form — *i.e.,* the last full day of active work and the average number of hours worked per week — are directed at two distinct criteria, both of which must be satisfied to obtain coverage under the Policy. First, an individual must be in the eligible class of "full-time employees" of PLC, which entails a showing that the individual performed "active work on [PLC's] regular work schedule" for "at least 30 hours a week." (Admin. Record at 5.) Second, the employee's coverage must not have terminated, an event that occurs on "the earliest of" a number of dates, including "at the end of the month following the date the Insured ceases to be a member of an Eligible Class." (*Id.* at 11.)

The two allegedly inconsistent statements made by Plaintiff on the life insurance claim form address these two distinct criteria for eligibility, and thus need not be reconciled with each other. By stating that his wife was a full-time employee who averaged more than 35 hours of work per week, (*see id.* at 30), Plaintiff established that Mrs. Kovacs was within the class of full-time PLC employees who were eligible for coverage under the Policy. But Plaintiff ***also*** was asked to confirm that his wife ***retained*** this eligible status at the time of her death — or, in other words, that her coverage under the Policy had not ceased under the

Policy's termination clause. Thus, the form asks for the employee's last full day of active work, and Plaintiff identified this date as August 31, 2014. (*See id.*) Under the express terms of the Policy, this meant that her coverage ceased at the end of the following month. (*See id.* at 11.)

Even assuming the two pieces of information supplied by Plaintiff on the claim form could be viewed as contradictory or inconsistent, it certainly was not irrational or unreasonable for Defendant to construe this information as establishing that Mrs. Kovacs was a full-time employee who ceased working on August 31, 2014. As Defendant observes, given that the claim form at issue is used to request life insurance benefits following an employee's death, "[t]here will necessarily be a date when the insured stopped working," (Defendant's Response to Plaintiff's Motion at 7), and this date must be disclosed in order for Defendant to determine whether the employee remained eligible for coverage under the Policy on the date of his or her death. Defendant further observes that if Plaintiff meant to identify August 31, 2014 as the date that his wife relocated to a home office, there was an "Other" space on the claim form where Plaintiff could have provided this explanation, but he instead used this space to indicate that his wife

15

stopped working due to illness. (*See* Admin. Record at 30.)[5] Consequently, whatever latent ambiguities or uncertainties might arguably be lurking within Plaintiff's application for life insurance benefits, the Court finds no basis for concluding that the Defendant insurer acted arbitrarily or capriciously by failing to uncover and investigate these questions, and by instead adopting a straightforward reading of Plaintiff's application that was consistent with the terms of the Policy governing eligibility for benefits.[6]

---

[5] Indeed, given the Policy's definition of "active work" as encompassing the performance of "normal duties" at "an alternative work site at the direction of [PLC]," (*id.* at 6), Plaintiff need not have provided any explanation regarding his wife's relocation to a home office, but could have simply identified her last full day of active work as the date of her death (or some appropriate date shortly before that). If his failure to do so was attributable to his misunderstanding of the questions asked and information sought on the claim form, Defendant cannot be said to have acted arbitrarily or capriciously by failing to perceive a claimant's confusion or uncertainty that, so far as the record discloses, was never brought to its attention.

[6] In light of this conclusion that Defendant's denial of Plaintiff's claim for benefits survives scrutiny under the deferential "arbitrary and capricious" standard of review, the Court need not reach Defendant's alternative contention that this case should be dismissed due to Plaintiff's failure to pursue the administrative appeal made available to him under the Policy. *See Fallick v. Nationwide Mutual Insurance Co.,* 162 F.3d 410, 418 (6th Cir. 1998) (recognizing that "[t]he application of the administrative exhaustion requirement in an ERISA case is committed to the sound discretion of the district court").

## IV. **CONCLUSION**

For the reasons set forth above,

NOW, THEREFORE, IT IS HEREBY ORDERED that Plaintiff's November 16, 2015 motion to reverse the denial of his claim for death benefits (docket # 12) is DENIED, and that Defendant's November 16, 2015 motion for judgment affirming ERISA benefits determination (docket #10) is GRANTED.

                                      s/Gerald E. Rosen  
                                      United States District Judge

Dated: January 9, 2017

I hereby certify that a copy of the foregoing document was served upon the parties and/or counsel of record on January 9, 2017, by electronic and/or ordinary mail.

                                      s/Julie Owens  
                                      Case Manager, (313) 234-5135